JUDGE HARDIN
delivered the opinion op the court.
This case is now for the second time before this court, a judgment dismissing the petition as to the appellant Downing having been reversed and the cause remanded for a new trial at the summer term, 1869 (5 Bush, 595), and a second trial in the court below having resulted in a judgment against the appellant and others for $4,060.04, from which this appeal is prosecuted.
As stated in the former opinion of this court, the firm of Downing & Duncan was dissolved on the 8th day of February, 1865, having on hand several hogsheads of tobacco belonging to the firm and to others. On the 22d day of February, 1865, a new co-partnership was formed, composed of said *683 Downing and Duncan, together with Hutchings and Weaver, who commenced business in the city of- Louisville in the firm name of Hutchings, Duncan & Co. A bill of exchange appears to have been drawn by Duncan, in the late firm name of Downing & Duncan, on February 28, 1865, payable to the order of Hutchings, upon Bacon, Clardy & Co., who accepted and paid it — Duncan and Hutchings, about the same time, without the concurrence of Downing, consigning said tobacco to Bacon, Clardy & Co. at New York for sale, to raise the means of paying said bill at maturity, which was discounted at Louisville, and the proceeds appropriated to the use of the firm of Hutchings, Duncan & Co.; but, as the plaintiffs allege, the sales of the tobacco were insufficient to reimburse them by more than three thousand dollars, which with interest they sought to recover in this action.
As the case was presented by the record when the cause was in this court before, the fact was admitted by the pleadings that Downing was a member of the new firm on February 28, 1865; and this court held, in substance and effect, that although, after the dissolution of the firm of Downing & Duncan, the latter had no authority to bind Downing as one of the drawers of the bill by signing the name of the late firm, nevertheless, as it appeared that the proceeds of the bill when discounted were applied to the use of Hutchings, Duncan & Co., all who were then members of that firm became responsible to the plaintiffs upon their paying the bill.
The first question to be determined is whether the portion of the record certified as a bill of exceptions can be considered as a legitimate portion of the record. The final judgment was rendered and a motion for a new trial overruled on the 16th of July, 1870; and the court then made an order giving time to the defendants until the 28th day of September, 1870, “ to prepare and file their bill of exceptions,” and on that day an order was made extending the time so given until the 5th *684 of October; and then by a like order it was further extended until the 8th of that month, when the parties appeared, and the bill of exceptions being tendered, a further order was made extending the time for completing and filing it until the 15th of October, 1870, when it was filed by the court, and “ ordered to be made a part of the record.”
To none of these orders was there any objection made or exception taken. But it is insisted for the appellee that, notwithstanding these regular extensions of the time first allowed, the power of the court to approve and certify the bill of exceptions' ceased after the expiration of sixty days from the date of the judgment; and we are referred to the case of Bailey v. Villier, 6 Bush, 27, as sustaining that construction of the law regulating the procedure of the Jefferson Court of Common Pleas.
As in the absence of any reservation of the authority of the court its power over its final judgments would, as decided in the case referred to, cease at the expiration of sixty days, just as the like power of the circuit courts of the state would cease at the end of a particular term, we do not doubt that if the appellant had failed for sixty days after the judgment to obtain leave to file his bill of exceptions at a subsequent time, or if, as. in the case of Bailey v. Nilliers, such leave had been given, and the prescribed time had passed without any further action on the subject, the right to file the bill of exceptions would have been lost. But we do not understand the case cited as deciding, nor can we now decide, that the common pleas court had not power, by proper orders, to allow the appellant time to file his bill of exceptions beyond sixty days succeeding the judgment. And however this may be, as the record shows that when the bill of exceptions was tendered, and the last order extending the time for the purpose of completing and filing it was made, both parties appeared, and no objection was made to the order nor any exception *685 taken, the objection now made for the first time in this court must be regarded as haying been waived in the court below; and the bill of exceptions is therefore considered as properly in the record.
After the return of the cause from this court, Downing tendered and offered to file an amended answer, verified by him, stating, in substance, that on the 28th day of February, 1865, the date of said bill of exchange, and before the appropriation of its proceeds by Hutchings, Duncan & Co., he had withdrawn from and ceased to be a member of said firm; and that the admission to the contrary, made in his former pleading, was the result of a mistake as to the dates of those transactions which he had recently discovered; but the court refused to allow the amendment to be filed, for the reason, as appears, that it contradicted a previous answer of the appellant; and afterward, on the trial, when evidence had been heard conducing to sustain the allegations of the amended answer, and to prove and explain the alleged mistake consistently with fairness and truth on the part of the appellant, he again offered to file his amended answer to conform his pleadings to the evidence; but the court again refused to allow the amendment to be filed, and these rulings are now complained of as errors for which the judgment should be reversed.
It seems to us that under the liberal provisions of section 161 of the Civil Code of Pi’actice, it would have been proper to allow the amendment to be filed, and especially so in view of the facts disclosed on the trial; but as in such cases the court exercises a sound and prudent discretion in the furtherance of justice, the allowance or rejection of an amendment is not usually a cause of reversal, unless there has been a manifest abuse of the discretion of the court. Whether there has or has not been in this case such an abuse of discretion we need not decide, as the judgment must be reversed on another *686 ground, and the' amended answer may be filed on the return of the cause.
Samuel Russell, Esq., one of the attorneys engaged in the prosecution of the áuit, and by whom it was commenced in June, 1867, was, against the objections of the defendants, admitted to testify on the trial as a witness for his clients. This, it is now insisted, was error, because under the act approved January 26, 1866 (Myers’s Supplement, 685), Mr. Russell had a lien on the plaintiff’s claim and the judgment they might recover thereon as security for his fee; and success in the prosecution of the action being necessary to render this security effectual, the attorney was directly interested in the issue to be tried; and not having released his lien, he was incompetent to testify as a witness for the plaintiffs, according to section 670 of the Civil Code of Practice. It seems to us this objection is well taken, and the error of the court is fatal to the judgment.
Wherefore the judgment is reversed, and the cause remanded for a new trial, and other proceedings consistent with this opinion.